UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
:
RICARDO LINTON, : **MEMORANDUM**
: **DECISION AND ORDER**
Petitioner, :
: 10 Civ. 4581 (BMC)
- against - :
:
:
:
WARDEN MARK BRADT, :
:
Respondent. :
:
-----------------------------------------------------------X

**COGAN, District Judge.**

This is a habeas corpus petition under 28 U.S.C. § 2254 in which petitioner challenges his conviction for second degree murder. He raises three points of error in his petition: (1) the trial court erroneously admitted certain witness statements as excited utterances and excerpts from a detective's memo book as past recollection recorded; (2) the evidence was inadequate to convict him beyond a reasonable doubt; and (3) the trial court erred in not granting an adjournment so petitioner could look for new counsel when he demanded new counsel near the end of trial. None of these claims have merit and accordingly the petition is denied.

## BACKGROUND

On January 13, 1993, petitioner, then 17 years old, approached a car containing four individuals he knew – Tommy San Miguel, Jose Rosa, Jose Sierra, and Ariel DeJesus – and opened fire into the car with a handgun. After hitting Rosa several times, petitioner grabbed Rosa by the collar when Rosa got out of the car and shot him point blank in the head, killing him, while the other three passengers scrambled away from the car. San Miguel was also hit by one

of the shots. Petitioner fled to Jamaica, West Indies, where he was apprehended ten years later and extradited to the United States for trial.

At trial, each of San Miguel, Sierra and DeJesus testified and identified petitioner as the shooter, although San Miguel and Sierra described petitioner's clothing differently. (DeJesus partially recanted his identification on redirect examination, following a break in which he had an encounter in the hall with a defense witness). All three knew him from the neighborhood as a marijuana dealer; San Miguel and Sierra had purchased marijuana from him and DeJesus had seen petitioner selling marijuana and had spoken to him.

Once petitioner started shooting into the car, Sierra and DeJesus ducked down into the back seat. San Miguel bolted from the car, and petitioner shot him in the leg, after which he continued to try to hobble away from the scene. As San Miguel attempted to get away, he looked back and saw petitioner grab Rosa and shoot him in the head. Sierra and DeJesus then got out of the car; Sierra hid between the rear of the car and a van parked behind it, and DeJesus ran away. Sierra testified that he also saw petitioner grab Rosa and shoot him in the head, which he observed while hiding behind the car. Petitioner then took a shot at Sierra, who fled.

Sierra returned less than five minutes later to find San Miguel sitting in the lobby of the building where Sierra lived, which apparently was adjacent to the scene. San Miguel showed Sierra the wound he had received. They walked back across the street to the scene when they saw the police arrive within minutes.

Detective (then Patrolman) Hector Caban was the first to arrive on the scene about five minutes after the shooting and found Rosa lying dead in the street. Detective Caban asked Sierra and San Miguel what happened, and they named petitioner as the shooter.

Other witnesses at trial then testified to the effort to find petitioner over the next decade and his eventual arrest in and extradition from Jamaica.

The jury convicted petitioner of the second degree murder of Rosa, but acquitted him of assaulting San Miguel and attempting to murder San Miguel and Sierra. Petitioner was sentenced to twenty-five years to life, plus concurrent time for violating probation from a prior sentence.

Additional facts will be set forth below as necessary to address petitioner's claims.

## DISCUSSION

### I. Evidentiary Issues

The Supreme Court authority in habeas cases for evidentiary error of constitutional magnitude provides for a stringent standard. A State court's evidentiary rulings, even if erroneous under State law, generally do not present constitutional issues cognizable in a habeas corpus petition. See Crane v Kentucky, 476 U.S. 683, 689, 106 S. Ct. 2142, 2146 (1986) ("We . . . acknowledge . . . our traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts."). In order to prevail on a claim that an evidentiary error deprived a defendant of due process, he must show that the error "was so pervasive as to have denied him a fundamentally fair trial." Collins v Scully, 755 F.2d 16, 18 (2d Cir. 1985) (citing United States v. Agurs, 427 U.S. 97, 108, 96 S.Ct. 2392, 2399 (1976)). See also Hughes v. Phillips, 457 F.Supp.2d 343, 367 (S.D.N.Y. 2006). The erroneous admission of the evidence must have been "sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it." Collins, 755 F.2d at 19. See also Agurs, 427 U.S. at 112, 96 S.Ct. at 2401; Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir.

3

1998) (citing Johnson v. Ross, 955 F.2d 178, 181 (2d Cir. 1992)). The evidence must be "crucial, critical, highly significant." Collins, 755 F.2d at 19 (citation omitted). In assessing materiality, the Court reviews the admitted evidence "in light of the entire record before the jury." Id.

Neither of the evidentiary points of error that petitioner asserts rise to this level.

### A. The Excited Utterances

After an evidentiary hearing without the jury, the trial court permitted both San Miguel and Sierra to testify that they had identified petitioner as the shooter to Detective Caban within minutes of the shooting. The trial court admitted those statements under the "excited utterance" exception to the hearsay rule, based upon its explicit factual findings that the statements were made less than five minutes after the shooting; that San Miguel was in a state of shock, staggering and in pain from being shot, and that he had witnessed Rosa's execution. The trial court rejected defense counsel's argument that because San Miguel and Sierra had talked about the shooting in the five minutes before they spoke to Detective Caban, and because their exclamation came in response to his initial question as to what happened, the requirements for an excited utterance were not met. Defense counsel thereupon determined not to object to Sierra's statement to Detective Caban.

I do not see this point as rising anywhere near the level of a federal constitutional issue. At the outset, it is important to note that, although petitioner refers obliquely to the Confrontation Clause in his habeas corpus submissions (he made no such reference in state court), this is not a Confrontation Clause case because all of the declarants appeared in court and were cross-examined on their identifications, both as to the identification at trial and at the scene 13 years earlier. See Crawford v. Washington, 541 U.S. 36, 59, 124 S.Ct. 1354, 1369 (2004) ("when the

declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements").[1] At most, these were corroborative, prior consistent statements of witness identifications that the witnesses repeated in court and in petitioner's presence. Defense counsel had the opportunity to examine the witnesses on both of their identifications and did so aggressively, uncovering discrepancies between the witnesses and between their trial testimony and their prior excited utterances.

It is true that the identifications to Detective Caban were important here because of the thirteen year passage of time between the shooting and the trial, a delay that occurred as the result of petitioner's flight. But that does not elevate the evidentiary issue into one of federal constitutional proportion. This is apparent for two reasons.

First, the trial judge acted within his discretion in applying the usual balancing test in determining whether the declarations had sufficient indicia of reliability to overcome the hearsay rule and fall within the exception. He found factually, after an evidentiary hearing, that at the time San Miguel made the statement, he was in shock from being shot, bleeding, barely able to walk, and having witnessed a shooting in which he was at least a potential close-range target and in which his friend was shot multiple times and then given the coup de grace in the head at close range. The trial further found that San Miguel's less than five minute discussion while in that condition with Sierra did not give them time to reflect and come up with a fictional story, nor does the record disclose any motive as to why he would. These are factual findings entitled to deference under 28 U.S.C. § 2254(e)(1) and I have no basis to find them erroneous.

---

[1] That assumes, *arguendo*, that Sierra and San Miguel's on-scene statements were testimonial in nature, which, given the trial court's findings as to the circumstances of the statements, they may not have been. See generally Davis v. Washington, 547 U.S. 813, 126 S.Ct. 2266 (2006) (victim's statements in response to 911 operator's interrogation were not testimonial, and therefore, were not subject to Confrontation Clause). If the statements are considered non-testimonial, then this would be another reason why the Confrontation Clause is not implicated.

5

Second, the lack of any due process implications is also evident from the fact that had this case been tried in federal court, there is no question that San Miguel's and Sierra's on-the-scene identifications would have been admissible – not just because they were spontaneous declarations (which they probably would have been, in any event, under Federal Rule of Evidence 803(2)), but because they are not even considered hearsay under federal law. Under Fed.R.Evid. 801(d)(1)(C), "A statement is not hearsay if ... [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is ... one of identification of a person made after perceiving the person ... ." The federal courts thus rely on cross-examination of the declarant as sufficient protection for the accused's right to due process. See U.S. v. Marchand, 564 F.2d 983, 986 (2d Cir. 1977). Such prior identification testimony is admissible regardless of whether the declarant accurately identifies a defendant at trial. U.S. v. Lewis, 565 F.2d 1248, 1251-52 (2d Cir. 1977). It does not even matter if the statement was made immediately after a crime, or upon encountering the accused weeks later, or in a line-up, or a court hearing. See 5 Jack B. Weinstein and Margaret A. Berger, Weinstein's Federal Evidence, §801.23[1] (Joseph M. McLaughlin, ed., Matthew Bender 2d ed. 2010) at 801-41.

It is true that New York observes a more defendant-protective evidentiary rule, prohibiting, in most cases, the use of "bolstering" a witness' testimony by referring to prior consistent statements unless there is a hearsay exception for such testimony. See People v. Buie, 86 N.Y.2d 501, 634 N.Y.S.2d 415 (1995). Perhaps that is why the prosecutor did not simply offer San Miguel and Sierra's identifications as prior consistent statements, as she would have

been able to do in federal court.² In any event, any such limitation has no application under federal law:

> [B]olstering ... "is not forbidden by the Federal Rules of Evidence and is not sufficiently prejudicial to deprive a defendant of his due process rights to a fair trial." Nieves v. Fischer, No. 03 Civ. 9803, 2004 WL 2997860, at * 7 (S.D.N.Y. Dec.28, 2004) (citations omitted). Courts in this circuit have repeatedly held that "the concept of 'bolstering' really has no place as an issue in criminal jurisprudence based in the United States Constitution," Id., and is a state law evidentiary issue.

Warren v. Conway, No. cv-07-4117, 2008 WL 4960454 (E.D.N.Y. Nov. 18, 2008), citing, Scott v. Walker, No. 01 CV 7717, 2003 WL 23100888, at * 8 (E.D.N.Y. Dec. 30, 2003); Smith v. Walsh, No. 00-CV-5672, 2003 WL 22670885, at * 6 (E.D.N.Y. Oct. 20, 2003); Diaz v. Greiner, 110 F.Supp.2d 225, 234 (S.D.N.Y. 2000). Thus, unless Fed.R.Evid. 801(d)(1)(C) is itself unconstitutional, which cannot seriously be argued, petitioner was not deprived of due process, even had the trial court's evidentiary ruling not comported with New York law.

### B. The Memo Book

When Detective Caban testified at trial, he had no independent recollection of the events that had occurred 13 years before. What he did remember, however, was that he had made extensive notes of the incident in his memo book, which he carried with him every day and had been in no one's possession but his since the incident. Based on the content of his rather extensive notes, he was able to determine that he had made the notes within a couple of hours of the time he appeared at the crime scene. The memo book confirmed that Sierra and San Miguel

---

² However, the New York Court of Appeals has held that prior identifications can be introduced, notwithstanding objections based on bolstering or hearsay, when the identification is the key issue in the case and the prior identification is only offered to show "the opportunity to observe at the time of the crime, and the reliability of her memory at the time of the corporeal identification ..." People v. Huertas, 75 N.Y.2d 487, 554 N.Y.S.2d 444 (1990). In that situation, a limiting instruction is appropriate. Id. Curiously, after admitting San Miguel's on-scene identification as an excited utterance, the trial court, when considering the memo book, erroneously stated that its earlier ruling was based on this Huertas case. Since the prosecutor did not present Huertas as a ground for admission of these statements on direct appeal, I will not consider it here either.

7

had named petitioner (by his nickname, "Ricky,") as the shooter. The trial court admitted that portion of the memo book over defense counsel's objection that the foundation was insufficient because Detective Caban could not remember that he was actually present on the scene; he only knew that from reading his memo book.

At least as much, and perhaps more, than the issue concerning San Miguel and Sierra's prior consistent statements, this routine evidentiary issue raises no constitutional question. San Miguel's and Sierra's statements from the scene were already in evidence. They and DeJesus had already identified petitioner in court as the shooter. The brief notation in the memo book was properly admitted as a near-textbook application of the past recollection recorded hearsay exception. The fact that the detective needed the memo book to validate his conclusion that he was present and could not testify to an independent recollection of his presence does not make the evidentiary ruling one of constitutional concern. This is because the admission of the memo book can in no way be found to have constituted an error "sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it." Collins, 755 F.2d at 19.

## II. Sufficiency of the Evidence

The Appellate Division held that petitioner's attack on the sufficiency of the evidence was procedurally barred. People v. Linton, 62 A.D.3d 722, 878 N.Y.S.2d 201 (2d Dep't), leave to app. den., 12 N.Y.3d 926, 884 N.Y.S.2d (2009). It accepted the prosecutor's argument that although trial counsel had moved to dismiss based on a general failure to make a *prima facie* case, he had failed to raise the issue that petitioner attempted to raise on direct appeal, namely, that inconsistencies between the witness' testimony left the jury unable to find beyond a reasonable doubt that petitioner was properly identified as the shooter. The Appellate Division

also held, in the alternative, that "[i]n any event, viewing the evidence in the light most favorable to the prosecution, we find that it was legally sufficient to establish the defendant's guilt beyond a reasonable doubt." Id. at 723, 878 N.Y.S.2d at 202 (citation omitted).

In seeking to demonstrate "cause and prejudice," see Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2546 (1991), for his failure to raise the point at trial that he raised on appeal, petitioner claims that his trial counsel was ineffective in not challenging identification in his motion at the close of the evidence. However, this is a case where the inability to meet the second prong of the test for ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052 (1984) – that the result would have been different but for the alleged error – is co-extensive with the merits of the argument that petitioner claims his counsel should have raised. In other words, petitioner cannot demonstrate that his counsel was constitutionally ineffective, and thus that cause exists for his default, because there is no reasonable possibility that a motion to dismiss on that ground would have been granted.

First, this Court's standard of review of the merits of an insufficiency claim is limited. "In evaluating whether the evidence [was] sufficient [to sustain a conviction, the court] must view the evidence in the light most favorable to the prosecution." Einaugler v. Supreme Court of the State of New York, 109 F.3d 836, 840 (2d Cir. 1997) (internal quotation marks and citation omitted). The Court must uphold a petitioner's conviction if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 324, 99 S.Ct. 2781 (1979).

Petitioner does not come close to meeting this test under any standard of review. Three eyewitnesses identified him as the shooter both at the scene and at trial 13 years later. There was no evidence to contradict them; petitioner relied instead on inconsistencies in their testimony –

9

primarily San Miguel and Sierra's having different recollections of what he was wearing – as well as the lack of optimal lighting conditions. These facts merely presented a classic jury issue, and do not furnish me with an opportunity to second-guess the jury's verdict. There is no basis for me to find that the Appellate Division's rejection of his claim was contrary to or an unreasonable application of Jackson. See 28 U.S.C. §2254(d); Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495 (2000).

Thus, whether viewed as procedurally barred because petitioner has no cause for failing to raise this claim at trial, or because the claim itself lacks merit, petitioner's attack on the sufficiency of the evidence does not provide a ground for habeas corpus relief.

### III. Rejection of Request for Appointment of New Trial Counsel

After three weeks into the case, just before the prosecution was going to call its last witness, petitioner demanded the appointment of new counsel. The trial court engaged in a colloquy with petitioner, who had retained his counsel, to find out why, and the answer was that petitioner was not satisfied that trial counsel was following his directions as to particular questions to ask the witnesses. The trial court also learned that petitioner could not identify any counsel with whom he could replace his retained counsel. After further inquiry, the trial court advised petitioner that it believed the request was tactical, that in fact trial counsel had done a very effective job, and that appointment of new counsel at that stage of the proceeding would likely require a mistrial. The trial court therefore rejected that request, and the Appellate Division affirmed that ruling on the merits. See People v. Linton, supra.

The standard of my review for this decision is again limited. I can only find that the Appellate Division erred in sustaining the trial court's ruling if the Appellate Division's decision was contrary to or an unreasonable application of Supreme Court authority. See 28 U.S.C.

10

§2254(d). However, there is no Supreme Court authority delineating the circumstances under which the failure to appoint new counsel during trial could constitute a due process or ineffective assistance claim, which makes this standard more difficult to satisfy. Although there is of course Supreme Court authority establishing the right to effective assistance of counsel and due process of law, "[t]he more general the rule, the more leeway [state] courts have in reaching outcomes in case by case determinations." Yarborough v. Alvarado, 541 U.S. 652, 653, 124 S.Ct. 2140, 2142-43 (2004).

It is clear from lower federal court decisions that once trial has started – let alone when it is nearing completion after three weeks, as was the case here – "a defendant does not have the unbridled right to reject assigned counsel and demand another." United States v. Calabro, 467 F.2d 973, 986 (2d Cir. 1972). According to these lower court decisions, the proper procedure is for the trial court to inquire into the basis for the dissatisfaction and determine if the defendant is in fact receiving competent representation. See McKee v. Harris, 649 F.2d 927, 933 (2d Cir. 1981). Moreover, common tactical disputes – like whether to object to certain testimony or ask particular questions – do not generally constitute grounds for a mid-trial change of attorney; a defendant must present a conflict of interest or a complete breakdown in communications. See United States v. White, 174 F.3d 290, 295 (2d Cir. 2005).

Here, the trial court conducted a proper inquiry and determined that there was no basis for declaring a mistrial or holding the jury for weeks while petitioner attempted to retain a new lawyer. The only disputes that petitioner identified were tactical disagreements over whether to recall witnesses or ask certain questions. This was a discretionary issue on which the trial court carefully balanced the needs of the case with petitioner's right to competent counsel, and there is

11

no basis for me to conclude that the Appellate Division unreasonably applied any Supreme Court precedent.

## CONCLUSION

The petition is denied and the case is dismissed. Therefore, a certificate of appealability shall not issue. 28 U.S.C. § 2253. Further, I certify that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. See 28 U.S.C. §1915(a); Coppedge v. U.S., 369 U.S. 438, 444, 82 S.Ct. 917 (1962).

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
April 4, 2011